(C.D. 4220)

ACEC ELECTRIC CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 19, 1971)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* and *Brian S. Goldstein* of counsel) for the plaintiff.

*L. Patrick Gray III*, Assistant Attorney General (*Urban S. Mulvehill*, trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: This case involves an importation of electric motors containing a clutch which are used on industrial sewing machines. Classification was made under item 672.25, Tariff Schedules of the United States, as parts of sewing machines pursuant to a decision involving the identical merchandise under the Tariff Act of 1930. *Acec Electric Corp.* v. *United States*, 55 Cust. Ct. 138, C.D. 2563 (1965). Duty was therefore assessed at the rate of 10 per centum ad valorem. In that case classification was made under paragraph 353, Tariff Act of 1930, as articles having as an essential feature an electrical element or device. The merchandise was therein claimed to be properly subject to classification under paragraph 372, Tariff Act of 1930, as parts of sewing machines. Notwithstanding the *eo nomine* provision for motors in the Tariff Act of 1930, that issue was not before the court for determination. In our decision in the above case, we held said motors, under the Tariff Act of 1930, to be properly subject to classification as parts of sewing machines.

In the case at bar, plaintiff admits the involved motors are parts of sewing machines but contends the classification is erroneous by virtue of the operation of General Interpretative Rule 10(ij) which requires classification under a specific provision, in this case motors of over $\frac{1}{10}$ but under 200 horsepower as provided for in item 682.40, Tariff Schedules of the United States, which prescribes the rate of 8.5 per centum ad valorem.

The pertinent statutory provisions read as follows:

Sewing machines other than those in item 672.05:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Parts:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

| | | |
|---|---|---|
| 672.25 | Other _____ | 10% ad val. |

Motors:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

| | | |
|---|---|---|
| 682.40 | Of over $\frac{1}{10}$ but under 200 horsepower_____ | 8.5% ad val. |

General Interpretative Rule 10(ij):

> a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

Part 4 headnotes:

1. This part does not cover—
 \*      \*      \*      \*      \*      \*      \*
   (vi) articles and parts of articles speci-
        cally provided for elsewhere in the
        schedules.

The record consists of the testimony of two witnesses called on be-
half of plaintiff and certain exhibits received on its behalf. There is
no dispute between the parties that the imported merchandise is used
to power or drive industrial sewing machines. The record establishes
the merchandise is sold as sewing machine motors, sewing machine
drive motors or, as indicated in plaintiff's exhibit 1, as a clutch motor
for industrial sewing machine operation.

It is evident from the record that the imported merchandise consists
of an electrical motor which has a clutch and brake mechanism fully
integrated within the case of the motor. The purpose of the clutch
is to permit the engagement or disengagement of the mechanical out-
put of the electric motor. This permits the operator of the sewing
machine to have the machine stop instantly while the motor continues
to rotate. The clutch does not affect the speed or power of the motor.
It merely engages or disengages the power source.

Based upon the experience of Mr. Schwartz, a witness called on
behalf of plaintiff, a sewing machine motor for industrial use is one
such as plaintiff's exhibit 1, a clutch type motor. Some sewing machine
manufacturers make a machine with a clutch built in and in such a
case a continuous running motor is required. When ordering an in-
dustrial sewing machine motor, a clutch motor is the item considered
and if a buyer desired a continuous running motor, he would have to
so specify.

The sole issue presented by this case is whether an electric motor
which contains a clutch mechanism is an electric motor or more than
an electric motor. If it is an electric motor, it is provided for *eo nomine*
under item 682.40, *supra*. This being a specific provision classification
thereunder is mandated by virtue of the operation of General Inter-
pretative Rule 10(ij) rather than as parts of sewing machines under
item 672.25, *supra*, as classified.

Research of cases involving electric motors failed to uncover a case
involving clutches, other than the original *Acec* case, *supra*, but did
bring forth, as urged by defendant, cases involving electric motors and
gears. See also *Gamble Vargish & Co., dba Seabury & Co.* v. *United
States*, 57 Cust. Ct. 448, C.D. 2834 (1966) ; *Servo-Tek Products Co.,
Inc.* v. *United States*, 57 CCPA 13, C.A.D. 969 (1969) ; *United States*
v. *The A. W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794 (1962).

All of these cases were tried under the provisions of the Tariff Act of 1930.

The *Servo-Tek* case, *supra*, involved an electric motor and a gear train enclosed in a gear box which was fastened together into a single operating unit. The gear mechanism in that case reduced the speed of the motor and increased the torque and was not integrated in the motor. Plaintiff in that action failed to produce evidence sufficient to show that the geared motors involved therein are regarded in the commerce and industry of the United States as a type of "motor". The court therefore held the geared motors involved therein to be more than motors.

The *Fenton* case, *supra*, involved an article invoiced as a "Hoover Electric Motor and Gear Assemblies" and consisted of the basic electric motor, gears and a frame which formed a protective skirt which was in no way related to the creation or transmission of mechanical power. These features in fact formed part of the floor polisher for which they were designed.

Both of these cases are distinguishable from the item before the court. The record herein establishes to our satisfaction that in the sewing machine trade which services industrial type sewing machines, a motor is considered to be one of the type involved herein. While there is also a continuous running motor which is used with machines having a built-in clutch, the purchaser would have to specify his need for a continuous running motor. Therefore, in the commerce and industry involved herein, the imported clutch motor is considered a motor. In addition the clutch does not affect the speed or torque of the mechanical output. There are no features, which are nonmechanical, which form part of the article to which it is to supply power. The design of the case of the motor is such as to house the clutch which is fully integrated with the motor. The removal of the clutch portion, by virtue of the design, would leave the motor useless. It is in effect a special purpose motor but nonetheless a motor.

In the *Gamble Vargish & Co.* case, *supra*, the court held that certain miniature electric motors with pinion gears and others with worm gears were subject to classification as motors under the provisions of paragraph 353, Tariff Act of 1930. The court in the course of the opinion made the following observation:

> It appears, upon examination of the sample in this case, that the pinion gear or worm gear is integrated physically in the motor, and, as far as we are able to determine, does not cause any substantial change in the use of the motor. Accordingly, in our opinion, the pinion or worm gear is a part of the motor, and the gear on the merchandise represented by plaintiff's exhibit 1 does not make the article anything "more than" a motor than would

the presence or absence of a base determine whether such an item is something more than a "motor."

We also note that section XVI, heading 85.01 of the Brussels Nomenclature, covering electric motors, indicates gear motors were intended to be covered by a provision substantially similar to the language contained in item 682.40, *supra*. Such motors are clearly within the category of special purpose motors referred to in the *Fenton* case, *supra*. By the same token, a motor with a clutch would fall within the category of a special purpose motor which is not "more than" a motor.

Since the imported merchandise is a motor, classification under item 672.25, *supra*, as parts of sewing machines is erroneous and the proper classification by virtue of the operation of General Interpretative Rule 10 (ij) is as a motor as set forth in item 682.40, *supra*.

Judgment will be entered accordingly.