59 CCPA

**GREAT WESTERN SUGAR CO., Railway Express Agency, Inc., Appellants,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5409.**

United States Court of Customs and Patent Appeals.

Jan. 20, 1972.

Barnes, Richardson & Colburn, New York City, attorneys of record for appellants; James S. O'Kelly, James H. Lundquist and J. Bradley Colburn, New York City, of counsel.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Susan C. Cassell, New York City, for United States.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision and judgment of the United States Customs Court, Second Division,[1] overruling a protest against the classification of certain cutting blades for sugar beet slicing machines under item 649.67, TSUS. Appellants claim classification as parts of machinery for use in the manufacture of sugar under item 666.20, TSUS.

The relevant TSUS provisions read in pertinent part as follows:

TSUS, Schedule 6, Part 3, Subpart E:
Knives and cutting blades for power or hand machines:

649.65　For agricultural or horticultural machines (except lawnmower blades and for shoe machinery) .......... Free

649.67　Other .......... 10% ad val.

1. 64 Cust.Ct. 127, C.D. 3971 (1970).

TSUS, Schedule 6, Part 4, Superior
Headnote 1(v):

1. This part does not cover—

\* \* \* \* \* \*

(v) articles and parts of articles
specifically provided for elsewhere
in the schedules.

TSUS, Schedule 6, Part 4, Subpart C:
Industrial machinery for preparing
and manufacturing food or drink,
and parts thereof:

666.20 Machinery for use in the
manufacture of sugar, and
parts thereof .......... Free

General Headnotes and Rules of In-
terpretation:

10. General Interpretative Rules.

\* \* \* \* \* \*

(ij) a provision for "parts" of an
article covers a product solely or
chiefly used as a part of such ar-
ticle, but does not prevail over a
specific provision for such part.

The merchandise consists of metal
plates about 6½ inches long and about 3
inches wide. One of the long sides has
a cutting edge in the form of a zig-zag-
ged line running most of the length of
the side. The blades are used exclusive-
ly in sugar manufacturing machinery
having no other known commercial use.
Their function is to cut sugar beets into
thin, shaped slices (cossettes) which are
then placed in a diffusor. Once in the
diffusor, the cossettes are usually me-
chanically conveyed in one direction while
being counter-currently contacted with
a water solution. In this way the sugar
values contained in the cells of the sugar
beet are lixivated through the cell walls
into the water solution. The size and
shape of the cossettes cut by the beet
slicers are very important to the success
of the diffusion process. Thinner cos-
settes present less resistance to lixiva-
tion, since there are fewer cells walls
for the sugar to traverse. At the same
time, the cossettes must have sufficient
mechanical strength so that they are not
disintegrated by the forces they are

subjected to in the diffusor, or they
would clog the diffusor.

Appellants contend that classification
of the blades as parts of machinery for
use in sugar manufacture is compelled by
United States v. American Express Co.[2]
Under the doctrine of *stare decisis*. They
also argue that the legislative intent be-
hind item 666.20 was to continue the
practice, dating back to the *American
Express* case, of allowing free entry of
sugar beet slicer blades. The Customs
Court held that *American Express* is not
controlling in this case, primarily because
of the differences between the statutes
involved in the two cases.

In *American Express*, the court con-
sidered whether beet slicer blades, ap-
parently identical to those presently un-
der consideration, were properly classi-
fied as "other cutting knives and blades
used in power or hand machines" or qual-
ified for duty-free treatment as parts
of machinery for use in the manufacture
of sugar. The competing provisions of
the Tariff Act of 1922 that were con-
sidered by the court were paragraph 356
in Title I and paragraph 1504 in Title
II, which read as follows:

Par. 356. Planing-machine knives,
tannery and leather knives, tobacco
knives, paper and pulp mill knives, roll
bars, bed plates, and all other stock-
treating parts for pulp and paper ma-
chinery, shear blades, circular cloth
cutters, circular cork cutters, circular
cigarette cutters, meat-slicing cutters,
and all other knives and cutting blades
used in power or hand machines, 20
per centum ad valorem.

Par. 1504. Agricultural implements:
Plows, tooth or disk harrows, headers,
harvesters, reapers, agricultural drills
and planters, mowers, horserakes, cul-
tivators, thrashing machines, cotton
gins, machinery for use in the manu-
facture of sugar, wagons and carts,
cream separators valued at not more
than $50 each, and all other agricul-
tural implements of any kind or de-
scription, not specially provided for,

2. 12 Ct.Cust.Appls. 483, T.D. 40693 (1925).

whether in whole or in parts, including repair parts: *Provided,* That no article specified by name in Title I shall be free of duty under this paragraph.

The sole contention of the Government was that the blades were taken out of paragraph 1504 by the proviso in that paragraph because they were "specified by name" as "all other cutting knives and blades used in power or hand machines," even though the precise name of the imported blades was not mentioned in paragraph 356. The court held otherwise, stating:

> The proviso to paragraph 1504, supra, doubtless was intended to refer to the many agricultural implements which are mentioned eo nomine in Title I of the act of 1922, such as pruning knives and budding knives in paragraph 354, hay, sugar-beet, and beet-topping knives in paragraph 355, animal clippers, pruning and sheep shears in paragraph 357, [etc.] . . .

> \* \* \* \* \* \*

> The purpose which Congress had in enacting paragraph 1504 must be borne in mind. Obviously, it was to give to agriculture any advantage which there might be in the free importation of the implements and machinery of agriculture and their parts. To hold, as contended for by appellant here, would be to do violence to such intention. It would result in the imposition of duties on the importation of every cutting part of an agricultural machine imported, although not specifically named for dutiable purposes in the act, whether it was a plow share, a sickle section for a mower or reaper, a rolling cutter, a blade for a stalk or ensilage cutter, or any other part of such a machine which might happen to have a cutting edge or surface. We can not adopt such a construction. The evi-

dent intent to benefit agriculture should be effectuated.

■■■ We find, as did the Customs Court, that the above reasoning in *American Express* is not applicable to the relevant provisions of the present statute. In the first place, the proviso of paragraph 1504 of the 1922 Act does not appear in the Tariff Schedules.[3] Questions of domination between competing provisions are now governed by the headnotes and interpretive rules contained in TSUS. Further, the fear expressed in *American Express*, that to hold sugar beet slicer knives dutiable would defeat the intent of Congress to allow free entry of agricultural implements and parts thereof, has been obviated by the provisions of the Tariff Schedules. The provisions for free entry of sugar making machinery is no longer a part of the provision for free entry of agricultural machinery.[4] A most pertinent example of the present separate treatment of sugar making machinery and agricultural machinery is item 649.65, *supra*, which specifically provides for free entry of agricultural knives and cutting blades, but does not so provide for knives and cutting blades for use in the manufacture of sugar. Finally, appellants' argument that the legislative intent was to continue the free entry of these blades, as evidenced by a statement of the Tariff Commission that the practice of allowing free entry for sugar making machinery and parts thereof was to be continued "without change,"[5] cannot stand in face of the explicit language of the statutory interpretive rules and the clear intent of the drafters of TSUS discussed immediately below. American Customs Brokerage Co. v. United States, 58 CCPA 45, C.A.D. 1002, 433 F.2d 1340 (1970).

■■ Turning to the provisions of the Tariff Schedules which are pertinent to

3. According to the Tariff Commission, that proviso had caused "classification confusion and anomalous results." Tariff Classification Study, Vol. 8, p. 265 (1960).

4. Free entry for agricultural machinery and parts thereof is now provided for in item 666.00, TSUS.

5. Tariff Classification Study, Vol. 8, p. 266 (1960).

the present controversy, item 666.20 appears in part 4 of schedule 6 of the Tariff Schedules. Headnote 1(v) of that part states that part 4 does not cover articles and parts of articles specifically provided for elsewhere. Also, General Interpretative Rule 10(ij) states that a provision for "parts" of an article does not prevail over specific provisions for such parts. In discussing this general scheme of classification, the Tariff Commission stated:

> The proposed provisions with respect to parts of machinery are uniform in principle and are more complete and realistic. Specific provisions have been included for a number of the more frequently used components of machinery. For example, there are specific provisions in part 3 [of schedule 6] for all screws, nuts, bolts, springs, saw blades, interchangeable tools for machine tools, and chains used for the transmission of power; and in this part, for boilers, non-electric motors, other general-purpose machinery, molds, taps, cocks, valves, bearings, pulleys, etc. . . . Many of the articles covered by the specific provisions for particular parts are variously classified at the present time in a number of conflicting provisions for "parts" of certain articles and in a number of "basket" provisions . . . .[6]

Item 649.67, which appears in part 3 of schedule 6, covers all knives and cutting blades for power or hand machines except those for agricultural, horticultural or shoe machinery.[7] It covers frequently used components of machinery. It is about as specific as the provisions listed above by the Tariff Commission as examples of "specific" provisions. We therefore hold that item 649.67 is a specific provision within the meaning of headnote 1(v) of schedule 6, part 4 and General Interpretative Rule 10(ij). Knives and cutting blades which are

parts of machinery for use in the manufacture of sugar must therefore be classified in item 649.67 rather than in item 666.20.

Appellant contends that the merchandise is more than knives or cutting blades and therefore is not classifiable under item 649.67. The court in *American Express* made the statement that "the evidence shows that these articles are more than knives and perform other essential processes in the making of beet sugar besides the mere cutting of the beets used." We have reviewed the evidence in the present case and the record in *American Express*, and we are unable to agree with that statement. The only arguable support for it is the court's conclusion that the blades "perform not only the function of cutting into shreds or slices, but also that of forming these shreds, or pieces, of beet substance, into a form where the following diffusion processes will more readily take place." However, it is clear from the evidence that there are no *separate* functions of cutting and forming. The beets are not cut into slices and the slices then formed into the desired shape by another part of the blade. Rather, the beets are *cut into the desired form*. The only working part of the blade is the cutting edge. The only function performed by the knives is that of cutting. There is no structure which is separate and distinct from the cutting edge which has been added to the knives to achieve any separate, non-incidental function. These knives are special purpose knives to be sure, and their blades are specially shaped for their intended use; but knives for special uses are well known and it is but the usual practice to shape the blades of such knives in the configuration best suited for their uses. We therefore disavow the *American Express* court's statement that these knives are more than cutting knives or blades.

6. Tariff Classification Study, Vol. 8, pp. 257–60 (1960).

7. Item 649.67 is thus more specific than paragraph 356 of the 1922 Act, *supra*, the language of which covers *all* knives and cutting blades used in power or hand machines.

In summary, the instant beet slicer blades are specifically provided for in item 649.67, TSUS. To accept appellants' contention that this item does not prevail over the provisions for parts of machinery for use in sugar manufacture would require us to ignore the plain language of aforementioned Headnote 1(v) and General Interpretative Rule 10(ij) and would serve to defeat the efforts of the drafters of TSUS to obtain a simplified tariff schedule which leads to uniform results.[8] Accordingly, the judgment of the Customs Court is affirmed.

Affirmed.

WORLEY, C. J., took no part in the decision of this case.

ALMOND, Judge (dissenting).

In the *American Express* case, which the majority seeks to distinguish from the instant case, although the imported merchandise is exactly the same and the issues are the same, it was said:

> The appellant [United States] insists the article of importation should be considered as specifically mentioned in paragraph 356, under the language, "and all other cutting knives and blades used in power or hand machines."

> Such language does not constitute a specific or eo nomine designation of the articles of importation here. In the first place, the evidence shows that these articles are more than knives and perform other essential processes in the making of beet sugar besides the mere cutting of the beets used. But, aside from that, it can not be held that such general language as "all other cutting knives and blades used in power or hand machines" should be considered as a special provision for and supplanting such specific language as that of paragraph 1504: "Machinery for use in the manufacture of sugar * * * whether in whole or in parts, including repair parts."

This part of the court's opinion indicates that two reasons were given for holding that sugar beet slicers were not to be classified as "other cutting knives and blades used in power or hand machines." I think both reasons still persuasive today. I would follow the *American Express* case.

First, I do not see how a provision for "Knives and cutting blades for power or hand machines" is that much more specific than a provision calling for "other cutting knives and blades used in power or hand machines." Secondly, even if the provisions are different, the "more than" doctrine would still apply. The same sugar beet slicers were considered more than knives and cutting blades in 1925, and I think properly so. Not all that cuts is a knife.

I would reverse the judgment below.

59 CCPA

---

8. See F. L. Smidth & Co. v. United States, 56 CCPA 77, C.A.D. 958, 409 F.2d 1369 (1969).