60 CCPA

**ALBERT E. PRICE, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5507.**

United States Court of Customs and Patent Appeals.

May 3, 1973.

United States Customs Court, 68 Cust. Ct. 50, C.D. 4334 (1972), wherein certain spice cabinets were held to have been properly classified under item 206.-97 of the Tariff Schedules of the United States (TSUS) as household utensils of wood and assessed with a duty of 16⅔ per centum ad valorem.

The involved merchandise consists of "Thoma-Wood Wall Spice Set wood cabinet with louver door hutch with two drawers at bottom."

Allerton deC. Tompkins, New York City, atty. of record, for appellant.

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Michael S. O'Rourke, New York City, for United States.

Before MARKEY, Chief Judge, RICH, BALDWIN, and LANE, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal by the importer from the decision and judgment of the

Appellant in its protest alleged that the merchandise in issue should have been classified under item 727.35, TSUS, as other wood furniture dutiable at the rate of 10.5 per centum ad valorem.

In overruling appellant's claim, the trial court held that Sprouse Reitz & Co. v. United States, 67 Cust.Ct. 209, 332 F. Supp. 209, C.D. 4276 (1971), was *stare decisis* of the issues presented.

The statutes involved are:

Tariff Schedules of the United States

*Classified*:
Household utensils and parts thereof,
   all the foregoing not specially provided for, of wood:
    \*     \*     \*     \*     \*     \*     \*     \*     \*
206.97   Other ................................ 16⅔% ad val.

*Claimed*:
Furniture, and parts thereof, not
   specially provided for:
    \*     \*     \*     \*     \*     \*     \*     \*     \*     \*
   Of wood:
    \*     \*     \*     \*     \*     \*     \*     \*     \*     \*
   Other:
727.35   Furniture other than chairs ................ 10.5% ad val.

Headnote 1, schedule 7, part 4, Subpart A:

   1. For the purposes of this subpart, the term "furniture" includes movable articles of utility, designed to be placed on the floor or ground, and used to equip dwellings, offices, restaurants, libraries, schools, churches, hospitals, or other establishments, aircraft, vessels, vehicles, or other means of transport, gardens, patios, parks, or similar outdoor places, even though

such articles are designed to be screwed, or bolted, or otherwise fixed in place on the floor or ground; and kitchen cabinets and similar cupboards, seats and beds, and sectional bookcases and similar sectional furniture even though designed to be fixed to the wall or to stand one on the other; . . .

A careful analysis of headnote 1, subpart A, part 4, schedule 7, TSUS, persuades us that the evidence of record fell short of establishing that the imported merchandise was embraced within the statutory definition of furniture. The Tariff Classification Study, schedule 7, page 242 states that "The concept of furniture embraced in this subpart is stated as a definition in Headnote 1." It is obvious that spice cabinets or racks such as we have in the instant importation are not "movable articles of utility designed to be placed on the floor or ground * * *." Furthermore, we agree with the conclusion reached by the Customs Court in Sprouse Reitz & Co., supra, that "it would be farfetched to say that they are kitchen cabinets or cupboards."

We find nothing to indicate that the articles in issue are known or even thought of as kitchen cabinets or that they were ever offered through any means to the public as furniture.

We deem it pertinent to note that the importation in issue consists of two models, W-1151 being 15¼ x 11¼ x 2¾ inches and W-1152 being 15¼ x 16½ x 2¾ inches, each consisting of shelves enclosed by two louvered doors above two drawers. We think it would strain credulity to consider an article only 2¾ inches deep to be a kitchen cabinet or anything similar thereto. The court below was correct in its conclusion that the small, decorative articles in issue were not similar in any way to kitchen cabinets.

We share the view so aptly expressed by the Customs Court that:

* * * the headnote discussion of furniture was, on its face, intended to certify the inclusion of furniture which was permanently fastened to the premises, either on the floor or on the walls, as opposed to furniture which was movable at will. In this respect, kitchen cabinets and similar cupboards were mentioned as examples of furniture which were capable of permanent placement. The mention of kitchen cabinets was *not* intended to expand the term "furniture" to articles of lesser substantiality than full size, genuine kitchen cabinets.

We agree with the Customs Court that "We are unable to conclude that the instant spice cabinets are more than household articles of a convenient and useful nature. It does not follow that they are furniture within the common meaning of that term."

We hold therefore that the imported merchandise was properly classified under item 206.97 of the Tariff Schedules of the United States as household utensils of wood.

The judgment of the Customs Court is affirmed.

Affirmed.

BALDWIN, Judge (dissenting).

The term "furniture" as it is used in item 727.35 is defined by Headnote 1, schedule 7, part 4, subpart A, to include "kitchen cabinets and *similar* cupboards * * *." The question before us is whether the merchandise at bar is included within that statutory definition. Webster's Third New International Dictionary (1961 ed.) gives the following definitions:

*cabinet* * * * 1: a box for storing chiefly small articles usu[ally] closed by a hinged or sliding door, fitted with shelves or drawers, and suitably finished as an item of home, office, or laboratory furniture: *a:* an upright case or cupboardlike repository for utensils, materials, or docu-

ments conveniently accessible for use (a bathroom wall [cabinet] for medicines, bandages, and toilet articles) (cards alphabetically arranged in rows of file [cabinets]) (installation of a [cabinet] sink in the kitchen) * * *

*cupboard* * * * 1a: a board or shelf for cups and dishes * * * 3: a closet with shelves to receive cups, dishes, or food; *also:* any small closet

The main reason the majority and the Customs Court considered the merchandise not to be kitchen cabinets was because of its size. Clearly there is no difference in function between the merchandise at bar and whatever larger cabinets the majority considers the term "kitchen cabinets" to be limited to. In my view, any difference in size is one of degree rather than a difference in kind. Nor is it important whether the merchandise was offered to the public as "kitchen cabinets" or as "furniture." We can safely assume that the merchandise was offered to the public as spice cabinets. The question is not what they are offered as but what they are, *i. e.*, do they fit within the statutory definition of "furniture."

Accepting, *arguendo*, the view that the cabinets at bar are not "kitchen cabinets," no reason is apparent why they are not "similar cupboards" within the meaning of the statutory definition. The entire function of the merchandise is to receive and store containers of food. Again the only possible basis for finding that the cabinets are not "similar cupboards" is the difference in size. Yet the size difference is not such as would prevent the cabinets from performing the function of cupboards. Moreover, the merchandise at bar is finished in the same manner that other wood furniture is finished, and it is just as suitable for *permanent* placement as any kitchen cabinet, bathroom cabinet, bookcase, or any other furniture designed to be fixed to the wall.

I would reverse the decision of the Customs Court.