57 CCPA

**J. E. BERNARD & CO., Inc., Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 5341.**

United States Court of Customs
and Patent Appeals.

Feb. 19, 1970.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellant. Earl R. Lidstrom, Rufus E. Jarman, Jr., New York City, of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Peter Jay Baskin, New York City, for the United States.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Chief Judge, Northern District of Iowa, sitting by designation.

LANE, Judge.

This appeal is from the decision and judgment of the United States Customs Court, Second Division, 295 F.Supp. 273, 62 Cust.Ct. C.D. 3684 (1969), overruling the protest of the importer to the classification of certain clock weights imported from Germany. We reverse that judgment.

Each clock weight, as revealed by a representative sample in evidence as plaintiff's exhibit 1, is in the shape of a pine cone approximately seven and one-half inches long with a wire loop or hook extending from the top. According to the sole witness, an experienced clock workman called by the importer, the clock weight is made by inserting a wire loop approximately a half inch into the top of a die or mold and then pouring in molten iron. After the metal solidifies, the die is taken apart and the weight is removed and colored. The witness testified that the loop cannot be removed without damaging the article.

The controversy lies between clauses (3) and (6) of subparagraph (c) of paragraph 368 of the Tariff Act of 1930, as modified by T.D. 52739, relating to clocks and clock movements. These provisions, as related to this case, are:

Paragraph 368:

\* \* \* \* \* \* \*

(c) Parts for any of the foregoing shall be dutiable as follows:

\* \* \* \* \* \* \*

(3) each assembly or subassembly (unless dutiable under clause (1) or (4) of this subparagraph) consisting of two or more parts or pieces of metal or other material joined or fastened together shall be subject to a duty of 65 per centum ad valorem and, in addition, to a duty of 3 cents for each such part or piece of material, except that in the case of jewels the specific duty shall be 25 cents instead of 3 cents. For the purpose of this clause and clause (4) of this subparagraph, bimetallic balance wheels, and main springs with riveted ends, shall each be considered as one part or piece;

\* \* \* \* \* \* \*

(6) all other parts (except jewels), 65 per centum ad valorem.

*Idem,* as modified by T.D. 52739:

(c) Parts for articles provided for in paragraph 368(a), Tariff Act of 1930, shall be dutiable as follows:

\* \* \* \* \* \* \*

(3) Each assembly or subassembly (unless dutiable under paragraph 368(c) (1) or (4), Tariff Act of 1930) consisting of two or more parts or pieces of metal or other material joined or fastened together, intended or suitable for any article provided for in item 368(a) (1) (2) in this Part ........................ 12½¢ for each jewel, if any, and 1½¢ for each other part or piece, and 32½% ad val.

\* \* \* \* \* \* \*

(6) Parts provided for in paragraph 368(c) (6), Tariff Act of 1930, for any article provided for in item 368(a) (1) (2) in this Part ........................ 32½% ad val.

The imported clock weight was held by the Custom Court to be properly classified as an "assembly or subassembly * * * consisting of two * * * parts or pieces of metal * * * joined together" under paragraph 368(c) (3), as modified. The importer urges that his protest claiming classification as "other parts" under paragraph 368(c) (6), as modified should have been sustained. It is not disputed that the weights are parts of clocks. The sole issue is whether the clock weight is properly classified as an assembly or subassembly as specified in clause (3), since that is the superior designation and only upon failure to meet its requirements will the article be relegated to the classification in clause (6) for other parts. It is our conclusion that the Customs Court erred in overruling the protest.

The Customs Court relied on Hammel Riglander Pennant Corp. v. United States, 22 CCPA 204, T.D. 47139 (1934), interpreting paragraph 367(c) (3) of the Tariff Act of 1930, pertaining to watches instead of clocks [1] but otherwise involving language identical to that of paragraph 368(c) (3), and paragraph 367(c) (4) providing for "all other parts" of watches analogously to paragraph 368(c) (6). The importations there were watch crowns each of which was composed of two metal parts—a metallic shell clamped around a metallic core so that the two elements could not be disunited or disassembled without damaging the crown. In that case, the court held that the crowns were "within the literal meaning of the language contained in" paragraph 367(c) (3), while ruling that the provision is not limited to "assemblies or subassemblies consisting of 'two or more' completely finished parts of watch movements, which could be united and disunited or assembled and disassembled * * *"

As to the present case, the Customs Court stated:

The ambiguity in the phrase, "two or more parts or pieces of metal or other material joined or fastened together," in paragraph 368(c) (3) justifies our referring (as did the appellate court with respect to identical phrasing in the *Hammel Riglander* case, *supra*) to the legislative background herein.

It then looked to references to paragraph 368(c) in Report No. 37 of the Senate Finance Committee accompanying H.R. 2667 (subsequently enacted as the Tariff Act of 1930), page 18, and to the Supplement to Tariff Information on Items in Tariff Bill of 1930 (H.R. 2667), prepared by the United States Tariff Commission for use of the Senate Finance Committee and House Committee on Ways and Means, page 215. The legislative history and the judicial construction of the language in paragraph 367 (c) led the court to conclude that:

* * * parts of clocks composed of two or more pieces of metal joined or fastened together, *whether or not capable of being detached*, are classifiable, unless expressly excepted therefrom or specially provided for elsewhere, under subclause (c) (3) of paragraph 368. [Italics added.]

It is apparent from the opinion of the Customs Court and the arguments of the parties that this case poses two questions. One is whether the clock weight as imported may be described as "consisting of two * * * parts or pieces of metal joined or fastened together" and the other is whether it is an "assembly or subassembly."

While only a portion of the original wire loop is exposed in the finished weight, it does not appear from the record that the unexposed portion embedded in the casting causes the loop to lose its identity in the casting process. Hence

1. The *Hammel Riglander* case was recognized as relevant to clocks as well as watches in Herman Miller Clock Co. v. United States, 22 CCPA 332, T.D. 47363 (1934). In that case, the court held that

bezels for clock dials composed of seven separate pieces of metal, and gongs having five metal rods fastened into a base with screws, were classifiable in paragraph 368(c) (3).

the question whether the article meets the "consisting of" clause must be answered in the affirmative.

Appellant's position on the other question is basically that forming an article by casting molten metal about a single part or piece does not provide an "assembly"[2] of two parts or pieces, and that such an article has not been produced by a process of assembly. Appellant states:

> An "assembly" (or subassembly) is by definition a "collection of parts assembled * * *" (Webster's Int'l Dictionary, Second Edition).

> *"assembly * * * n * * * 6.* The act or process of building up a complete unit, as a motor vehicle, using parts already in themselves finished manufactured products.

> * * * * * *

> 7. *Mach.* A collection of parts so assembled as to form a complete machine, structure, or unit of a machine; as, a hub *assembly.*"

As to the verb "assemble," Webster's New International Dictionary (1932) sets out the definition:

> 3. To collect or put together the parts of: as, to *assemble* a bicycle, watch, gun, or other manufactured article.

The importer also cites C. J. Tower & Son of Buffalo, Inc. v. United States, 62 Cust.Ct.C.D. 3840, Customs Bulletin, Vol. 3, No. 27 (1969). There the court considered the word "assembled" in the different context of item 807.00 T.S.U.S. relating to articles assembled in whole or in part of fabricated components which were the product of the United States. It concluded that "the term 'assemble' contemplates the joining of mass which is [masses which are?] in the form of solids"[3] although that conclusion was not necessary to the decision because it was found that the items "as-

sembled" there (two plastic sheets) were actually solids at the time.

The Government urges that the importer's position is based on "an argument for a definition of 'assembly' other than the one provided by Congress in the particular statutory provision under consideration." It quotes from the *Hammel Riglander* case as follows:

> We think it is evident, from the language of clause (3) [paragraph 367 (c)], *supra*, that the Congress did not intend that its provisions should be limited to assemblies or subassemblies consisting of "two or more" completely finished parts of watch movements, which could be united and disunited or assembled and disassembled, as claimed by counsel for appellant. If the Congress intended to so limit the provisions in question, it would have been sufficient to have said "each assembly or subassembly of parts." The clause, however, defines assemblies and subassemblies as consisting not only of two or more parts, but also of two or more pieces of metal or other material joined or fastened together, and, with certain exceptions, provides a duty of "3 cents for each *such part or piece of material.*" [Italics quoted.]

However, the watch crown in that case was unquestionably made from two preexisting parts and the specific point decided was that it was immaterial to classification in paragraph 367(c) (3) that such parts were joined permanently or in such manner that they could not be disassembled without ruining the assembled part. In stating that the "consisting of" clause defines "assemblies and subassemblies," the court in the *Hammel Riglander* case made a statement that was reasonably appropriate with respect to the narrow issue it had before it. But we do not regard the statement as accurate in the sense the Government now

---

2. Obviously, any distinction that may exist between "assembly" and "subassembly" is immaterial in the present use.

3. The court also observed that "a certain incongruity develops from an application

of the term 'assembled' to the description of a process which unites a solid with a liquid."

urges as applied to the entirely different issue of whether casting molten metal about a portion of a wire loop to form a clock weight results in an "assembly." The "consisting of" clause *modifies* the words "each assembly or subassembly" in paragraph 368(c) (3) but it does not define those words in the true sense and, in particular, cannot enlarge their meaning.

Apparently recognizing that *Hammel Riglander* is not dispositive of the present case, counsel for the Government urged in oral argument that, as the clock weight is made, the molten metal hardens into a solid some time before joining with the wire takes place, "if only for a fraction of a second." We find nothing in the record to justify any such conclusion that the molten metal is ever a solid piece at any time prior to its being joined with the wire loop.

The opinion of the Custom Court herein is directed primarily to a contention of the importer, no longer urged, that paragraph 368(c) (3) does not encompass an article whose pieces are permanently joined together. The Court's only reasoning concerning the meaning of the term "assembly" appears to be the following:

If Congress felt it necessary to specifically except from classification as "assembly" or "subassembly" a balance wheel composed of two pieces of metal soldered together, its understanding of those terms apparently extends to two or more pieces of metal or material, such as the clock weights at bar, which are permanently joined or fastened together.

We do not agree that the express exception of bimetallic balance wheels from paragraph 368(c) (3) is any indication that the present clock weights are classifiable there. The two pieces of metal soldered together to form the wheel are each already finished parts or pieces when soldered. The same is also obviously true of the parts or pieces making up the other exception in the aforementioned paragraph—main springs with riveted ends. Both exceptions are distinguished from the present clock weights where one portion has no identity as a part or piece until solidified with the wire loop.

 Returning to the definitions of "assembly" and "assemble" set out above, we think the clear import of paragraph 368(c) (3) is that an assembly as specified therein results when two or more existing parts or pieces are joined together but not when a part is formed by casting molten metal about a portion of a single preexisting part or piece. We see no ambiguity in the provision under consideration with respect to the present issue and find no reason to resort to external aids for interpretation.

The present imports are properly classifiable in paragraph 368(c) (6) as claimed by the importer.

The judgment of the Customs Court is reversed.

Reversed.